**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.; FRANK
BELCHER; MARC MAYFIELD,
            *Plaintiffs-Appellants,*

                v.

SWIFT TRANSPORTATION CO., INC.
(AZ); SWIFT TRANSPORTATION CO.,
INC. (NV),
            *Defendants-Appellees.*

No. 09-17643

D.C. No.
2:02-cv-01059-PGR

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.; FRANK
BELCHER; MARC MAYFIELD,
            *Plaintiffs-Appellees,*

                v.

SWIFT TRANSPORTATION CO., INC.
(AZ); SWIFT TRANSPORTATION CO.,
INC. (NV),
            *Defendants-Appellants.*

No. 09-17726

D.C. No.
2:02-cv-01059-PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, Senior District Judge, Presiding

Argued and Submitted
December 9, 2010—San Francisco, California

Filed January 20, 2011

1193

Before: Dorothy W. Nelson, David R. Thompson, and M. Margaret McKeown, Circuit Judges.

Opinion by Judge D. W. Nelson

**COUNSEL**

Brian J. Campbell, Phoenix, Arizona, for the plaintiffs-appellants-cross-appellees.

Paul D. Cullen, Daniel E. Cohen, and Joyce E. Mayers, Washington, District of Columbia, for the plaintiffs-appellants-cross-appellees.

William E. Quirk, James C. Sullivan, and Anthony W. Bonuchi, Kansas City, Missouri, for the defendants-appellees-cross-appellants.

**OPINION**

D. W. NELSON, Senior Circuit Judge:

Plaintiffs Frank Belcher, Marc Mayfield, and the Owner-Operator Independent Drivers Association, Inc. ("OOIDA") appeal the district court's order granting summary judgment to Defendants Swift Transportation Co. ("Swift") regarding

liability and damages under the Truth-in-Leasing regulations.[1] Defendants cross-appeal the district court's finding that the statute of limitations is four years instead of two. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Swift is a federally regulated motor carrier that hauls freight in interstate commerce. The named plaintiffs in this case are former owner-operator truck drivers who were hired by Swift to haul freight. Plaintiff OOIDA is a trade association with more than 160,000 members. Owner-operators are truck drivers who contract with motor carriers to provide hauling services; they typically own their own equipment and lease out their trucks and hauling services to carriers on a weekly basis. Frequently, carriers pre-pay the costs of certain goods and services for which the owner-operators are ultimately responsible. These items may include fuel, insurance, tires, and other necessary goods and services. The cost of these items is then deducted from owner-operators' compensation in a process known as a "charge-back." Charge-backs are noted along with compensation on drivers' weekly pay stubs, also known as settlement sheets or statements.

The Department of Transportation ("DOT") is authorized to regulate the relationship between owner-operators and motor carriers, including required terms in their leases. *See* 49 U.S.C. § 14102(a). The federal Truth-in-Leasing regulations, 49 C.F.R. Part 376, set forth specific requirements with regard to charge-backs in response to concerns that carriers were taking advantage of owner-operators and overcharging them with undisclosed mark-ups on certain items. *See OOIDA v. Swift Transp. Co.* ("*Swift I*"), 367 F.3d 1108, 1110 (9th Cir. 2004). The regulations were originally enforced by the Interstate Commerce Commission ("ICC"); now that the ICC has been eliminated, owner-operators have a private right of action to

---

[1] We use "OOIDA" in this opinion to refer to all plaintiffs, and "Swift" to refer to defendants.

enforce the regulations. *See id.*; 49 U.S.C. § 14704(a). Section 14704(a)(1) provides a right to injunctive relief, and (a)(2) provides a right to seek damages for injuries "sustained by a person as a result of an act or omission of [a] carrier or broker in violation of this part." 49 U.S.C. § 14704(a).

Plaintiffs brought suit under section 14704(a) against Swift "alleging that the carriers' standard form lease agreements violate the Truth-in-Leasing regulations in various respects." *Swift I*, 367 F.3d at 1110. Plaintiffs sought declaratory relief, injunctive relief, and damages. As a result of this litigation, Swift revised its leases beginning January 1, 2003. 49 C.F.R. § 376.12(h), provides that

> [t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

The district court found that Swift's form lease agreements used prior to 2003 (the "Old Form" lease), violated the Truth-in-Leasing regulations because they "did not disclose the fact that certain of the charge-backs included a 'mark-up.'" *OOIDA v. Swift Transp. Co.* ("*DC Opinion & Order*"), No. CV-02-1059-PHX-PGR, 2007 WL 2808997, at *2 (D. Ariz. Sept. 27, 2007). By contrast, the district court found that Swift's leases entered into on or after January 1, 2003 ("Revised Lease") complied with section 376.12(h) because they disclosed that charge-backs would include certain administrative costs and other fees such as "the cost of the fuel, taxes, other government fees and charges, delivery/freight costs and administrative expenses." *See id.* at *5-6 & n.11. Swift's Revised Lease also discloses each item that will be subject to a charge-back and either a flat-fee amount for that

charge-back or other information relevant to determining the price. Swift's settlement statements (which are similar to pay stubs or receipts) list the amount deducted from owner-operators' compensation. Those amounts match the amount listed earlier on the leases. However, Swift's Revised Lease does not disclose what portion of that price is attributable to costs and what portion is profit, administrative fees, or other charges.

The district court granted in part and denied in part the parties' cross-motions for summary judgment. It concluded that, while Swift's Old Form lease violated the Truth-in-Leasing regulations, injunctive relief was not necessary because Swift's current lease complied with the regulations. *Id.* at *9. It also held that Plaintiffs had failed to prove damages and that restitution and disgorgement were not available under the regulations. Plaintiffs filed a motion to reconsider, which the district court denied on September 15, 2009. *OOIDA v. Swift Transp. Co.*, No. CV-02-1059-PHX-PGR, 2009 WL 2983206 (D. Ariz. Sept. 15, 2009). This appeal followed.

## II.  *STANDARD OF REVIEW*

We review a district court's interpretation of a federal statute de novo, *United States v. Migi*, 329 F.3d 1085, 1087 (9th Cir. 2003), and we do the same for its grant of summary judgment. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir. 2000). In evaluating a motion for summary judgment, we infer all facts in favor of the non-moving party. *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978). A district court's decision to grant or deny an injunction is reviewed for abuse of discretion. *Id.* at 701.

## III.  *THE DISCLOSURE & DOCUMENTATION REQUIREMENTS OF 49 C.F.R. § 376.12(h)*

Plaintiffs argue that the district court erred in concluding that Swift's Revised Lease complied with 49 C.F.R.

§ 376.12(h). Plaintiffs contend that the Revised Lease (post-2003), while an improvement over the Old Form Lease (pre-2003), nonetheless falls short of compliance with the regulations because it does not disclose the amount of Swift's profits and mark-ups as components of the charge-back prices.

**[1]** When construing a statute or regulation, we look to "the whole law, and to its object and policy," not simply to "a single sentence or member of a sentence." *Doe v. Rumsfeld*, 435 F.3d 980, 987 (9th Cir. 2006) (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94-95 (1993)). Section 376.12(h) provides as follows:

> The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

We have previously held that "[a] primary goal of this regulatory scheme is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Swift I*, 367 F.3d at 1110; *see also* Lease and Interchange of Vehicles ("Notice of Proposed Rulemaking" or "NPRM"), 46 Fed. Reg. 44013, 44014, 1981 WL 107853 (Sept. 2, 1981), ("It appears that, in certain instances, carriers are defeating the intent of the present regulations by profiting from charge-back items at the expense of owner-operators."); Lease and Interchange of Vehicles ("Final Rule"), 47 Fed. Reg. 51136, 51139, 1982 WL 146684 (Nov. 12, 1982), (discussing one purpose of the Final Rule, to "deter any excessive 'mark up' of insurance, as discussed in our notice of proposed rulemaking"). One way to ensure carriers do not take advantage of lessors is to mandate that carriers disclose the full costs that lessors will be obligated to pay up front. This pre-

vents carriers from hiding fees until the charges have already been incurred and allows lessors to make informed decisions about where to seek products and services. *See* Lease and Interchange of Vehicles Ex Parte No. MC-43 (Sub-No. 7), 131 M.C.C. 141, 151-52, 1979 WL 11158, at *8 (Jan. 9, 1979), RED Add. 13 ("We believe that a prime concern of lessors in choosing insurance coverage is knowing exactly how much they will be charged. With this information they are better equipped to obtain the best insurance coverage possible.").

**[2]** In furtherance of these goals, section 376.12(h) contains both a disclosure provision, requiring carriers to disclose the charges they will deduct from lessors' compensation, and a documentation provision, requiring carriers to offer proof that lessors have been charged appropriately. We address the disclosure and documentation provisions separately below.

## A.   *Disclosure*

Swift's Revised Lease lists all charge-backs to which lessors are subject, along with either the flat-fee price for that charge-back (*i.e.*, $15/week) or other information relevant to compute the price (*i.e.*, number of gallons times the posted pump price). The Lease also discloses whether the price of a charge-back includes a mark-up or administrative fee. OOIDA argues, however, that the disclosure requirements mandate that Swift recite precisely how all charge-backs are to be computed, including informing lessors what portion of the price is composed of Swift's actual costs versus its profits, administrative expenses, etc. In this case, they argue that Swift's mere statement of the dollar amount to be charged and the notice that the flat fee included "administrative costs" was insufficient to satisfy the disclosure requirements. Thus, the crux of the current dispute is whether motor carriers must simply disclose (1) the full charge they impose on owner-operators (or, in the case of a variable-rate charge, the method of computing the charge) and (2) the fact that certain charges

included mark-ups; or whether, as plaintiffs contend, they must *also* disclose (3) the complete methods by which such charges are calculated, including documentation of their costs to third parties and profits realized.

**[3]** Defendants do not cross-appeal the district court's declaratory judgment that their Old Form Lease was unlawful. *See DC Opinion & Order*, 2007 WL 2808997, at \*2 ("conclud[ing] that . . . Swift's old form leases . . . violated the charge-back regulation at least to the extent that those leases did not disclose the fact that certain of the charge-backs included a 'mark-up', *i.e.*, a sum added by Swift as compensation for its administrative costs in supplying the products or services to the owner-operators and/or to provide it with a profit on those products and services"). Therefore, we do not review in this opinion the question of whether the regulations mandate that carriers disclose the existence of mark-ups. Instead, we consider the narrower question of whether Swift's current lease, which includes such disclosures, is lawful without revealing the additional, more detailed information Plaintiffs argue is required.

**[4]** This is an issue of first impression in this Circuit. While this Court has already heard an earlier appeal in this case, that appeal concerned only a denial of preliminary injunction and its analysis was confined to the correct standard for issuing such an injunction. The Eleventh Circuit, the only court of appeals that has analyzed this issue on the merits, recently filed an amended opinion persuasively addressing a similar claim. The court concluded that, at least with respect to flat-fee charge-backs, "376.12(h) does not require [carriers] to do more than disclose the flat-fee in the lease and follow up with settlement statements that explain the final amount charged back." *OOIDA v. Landstar Sys., Inc.* ("*Landstar II*"), 622 F.3d 1307, 1320 (11th Cir. 2010).

**[5]** While the text of the regulation does not rule out either party's proffered construction, a plain language reading

slightly favors Defendants' simpler construction. The text of the regulation simply mandates that the lease (1) identify all goods and services that will be subject to a charge-back; and (2) provide lessors with a way to determine how much they will be charged for that product or service (or "a recitation as to how the amount of each item is to be computed"). 49 C.F.R. § 376.12(h). The requirement that carriers disclose "how the amount of each item is to be computed" appears to be, but is not necessarily, satisfied where carriers simply do the full calculation in advance and supply owner-operators with the exact price they will be charged. Similarly, for variable-rate fees, identifying how the price will be calculated may, but need not necessarily, involve disclosing exactly what the carrier's costs and profits are. However, as the Eleventh Circuit noted, neither party's interpretation contradicts the meaning of the text. *See Landstar II*, 622 F.3d at 1320 (noting that "both [parties] make sensible arguments about the plain language of § 376.12(h)."). Therefore, we must move beyond the four corners of the regulation to examine its purpose and history.

**[6]** Beyond the text of the regulation, Plaintiffs contend that its purpose would also be served by requiring carriers to disclose their profits and the quantity of any mark-ups they include in charge-backs. They argue that the final version of section 376.12(h) incorporated the ICC's disapproval (voiced earlier in its Notice of Proposed Rulemaking) of the profits carriers were making off of charge-backs to the detriment of owner-operators.[2] Thus, it intended to curb excessive mark-

---

[2]Defendants contend that the NPRM issued in 1981, 46 Fed. Reg. 44013, 44014-15, 1981 WL 107853 (Sept. 2, 1981), is irrelevant because it is superceded by the Final Rule, which contains narrower language. The Eleventh Circuit also heavily emphasized this point, effectively disregarding the NPRM in its decision. *Landstar II*, 622 F.3d at 1320-22. While Defendants and the Eleventh Circuit are correct that the Final Rule, to the extent that it differs from the NPRM, controls, dismissing the NPRM commentary in its entirety is not warranted given the ICC's reference to it in

ups by motor carriers and level the playing field with regard to information about how charge-backs are computed. *See* Final Rule, 47 Fed. Reg. 51136, 51139, 1982 WL 146684 (Nov. 12, 1982). However, OOIDA seems to erroneously equate "excessive" with "any" mark-ups in this instance. *See DC Opinion & Order*, 2007 WL 2808997, at *2. The district court, and virtually every court that has addressed the issue, has correctly concluded that profiting from charge-backs is not per se unlawful. *Id.*; *see also, e.g.*, *Landstar II*, 622 F.3d at 1319; *OOIDA v. C.R. England, Inc.*, 508 F. Supp. 2d 972, 981 (D. Utah 2007) ("[C]harge-backs that include profits and fees are not *per se* unlawful under § 376.12(h) . . . ."). Thus, to ascribe to the regulations a purpose of eliminating carriers' profits is unsustainable.[3] The central purpose of the statute is

the Final Rule itself. *See* Final Rule, 47 Fed. Reg. 51136, 51139, 1982 WL 146684 (Nov. 12, 1982), (discussing the need to protect lessors from unfair carrier practices, "as discussed in our notice of proposed rulemaking"). However, the NPRM does not merit the weight that Plaintiffs would give it because the Final Rule refers to changes made as a result of comments indicating the proposed rule would be onerous on carriers. *See id.* at 47 Fed. Reg. 51139; *Landstar II*, 622 F.3d at 1320-22 (discussing the differences between the proposed and final versions of the rule); *see also id.* at 1319 ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.") (quotations omitted). Therefore, we refer to the NPRM throughout this opinion as probative evidence of the regulation's purpose to the extent that it is consistent with the text and commentary in the Final Rule.

[3] One case Plaintiffs cite to support their contention that a full itemization is necessary has been persuasively dismissed by the Eleventh Circuit. In *Ledar II*, the carrier's lease contained neither a disclosure of what services and products would be charged back to the owner-operators, nor a description of how the amount of those charges would be calculated. *See OOIDA v. Ledar Transport*, No. 00-0258-CV-W-FJG, 2004 WL 5249148, *5 (W.D. Mo. Dec. 30, 2004) ("*Ledar II*") ("Ledar's Lease Agreement with Plaintiffs failed to identify [numerous] items that were charged-back against their compensation . . . ."). The court also made the following finding of fact: "Ledar charged-back for Comdata-related transaction fees in excess of what Ledar advanced on behalf of Plaintiffs and Class members.

not to limit carriers' profitability; rather, it is to ensure that they do not reap unfair profits "at the expense of owner-operators." *See* NPRM, 46 Fed. Reg. 44013, 44014-15, 1981 WL 107853 (Sept. 2, 1981).

**[7]** Thus, the district court reasoned that courts should construe the regulation to ensure that owner-operators have fair notice of any fees they will be required to pay. *See DC Opinion & Order*, 2007 WL 2808997, at *4. This construction is reasonable given the regulation's text and the competing values of fairness and efficiency cited in the regulatory history. *Compare* NPRM, 46 Fed. Reg. 44013, 44014, 1981 WL 107853 (Sept. 2, 1981) ("It appears that, in certain instances, carriers are defeating the intent of the present regulations by profiting from charge-back items at the expense of owner-operators."); *with* Final Rule, 47 Fed. Reg. 51136, 51139, 1982 WL 146684 (Nov. 12, 1982) ("The parties contend that the costs and administrative burdens associated with the proposed rule would be enormous . . . . In light of these comments, we conclude that, rather than require carriers to state with specificity the amount of charge-backs, we should, instead, require that the lease contain the charge-back items,

---

Ledar hid its actual costs by 'whiting out' the actual costs in documentation provided to drivers." *Id.* at *6 (footnote omitted). The court's conclusion of law on this issue states, "The regulatory history of Section 376.12(h) indicates that charge-backs that exceed the actual amount advanced by the motor carrier are unlawful." *Id.* at *6 n.36 (citing NPRM, 46 Fed. Reg. 44013 (Sept. 2, 1981)).

The Eleventh Circuit pointed out that *Ledar II* relies on the 1981 Notice of Proposed Rulemaking, rather than the Final Rule, in determining that mark-ups themselves are unlawful. *Landstar II*, 622 F.3d at 1319. While we note above that the NPRM should not be dismissed entirely, in this case its language is not supported by the Final Rule. The Final Rule does not indicate in any way that mark-ups are per se unlawful; indeed, it attempts to deter "excessive mark-ups," suggesting that only a certain subset of mark-ups are problematic. Therefore, we agree with the Eleventh Circuit that *Ledar II*'s analysis is flawed and does not merit concurrence with its conclusions.

together with a recitation as to how the amount of each item is computed."). Other courts considering this issue have come to similar conclusions. *See Landstar II*, 622 F.3d at 1319-22; *C.R. England*, 508 F. Supp. 2d at 981-82.

[8] Disclosure of the amounts owner-operators will be charged furthers this purpose of fair notice by ensuring that carriers do not lure lessors to purchase goods from them with the false promise of at-cost or low charges, only to hit them later with charges that they were unaware of before they received their settlement statements. A complete disclosure of profits and third-party costs is unnecessary to reach this goal.

[9] Defendants' position is the strongest with regard to its flat-fee charge-backs. If the carrier charges a flat fee, there is no danger of surprise when the operators receive their settlement statements. Lessors can plan accordingly and purchase their goods and services elsewhere if they can find a better deal. *See OOIDA v. Rocor Int'l, Inc.*, No. CIV-98-846-L, 2000 WL 35512897, at *3 (W.D. Okla. July 19, 2000) ("[Carrier's] argument that it need not disclose the method of computing the $35.00 charge because [it is] a 'flat fee' does not alter the fact that it did not disclose the amount charged . . . ."). A listed price is thus the clearest way to comply with the requirement that carriers inform lessors how their charges will be calculated, as nothing is left to chance or surprise. Neither the text nor the purpose of the regulation requires more. *See* Final Rule, 47 Fed. Reg. 51136, 51139, 1982 WL 146684 (Nov. 12, 1982) (concluding that whenever carriers cannot "state with specificity the amount of charge-backs, we should, instead, require that the lease contain . . . a recitation as to how the amount of each item is computed"); *Landstar II*, 622 F.3d at 1320.

Construing the regulation becomes more complicated, however, when the carrier does not charge a flat fee, but rather some variable rate for a product or service. In such cases, simply disclosing that a charge will include a mark-up may be

insufficient because, without knowing what the mark-up will be, the lessor may have no ability to determine up front what she will be required to pay. Indeed, the Eleventh Circuit's analysis in *Landstar II* explicitly distinguished flat-fee from variable-rate charge-backs, presuming that a full accounting of mark-ups was required for variable-rate prices in order for lessors to know what they would be charged. The court noted,

> Landstar admits that § 376.12(h) mandates the disclosure of the motor carrier's third-party, actual costs for variable-rate charge-backs. For example, Landstar agrees that it must disclose its actual, third-party costs for charge-backs under certain variable-rate formulas: for instance, it admits that it must provide its actual costs for the LCAPP Tire Program, which specifies in the lease that the charge-back is "Landstar's vendor cost + $6 administrative fee."

*Landstar II*, 622 F.3d at 1320; *see also Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*, No. Civ.A. H-04-1074, 2005 WL 1185811, at *17 (S.D. Tex. Apr. 20, 2005) (holding that leases containing variable-rate insurance charge-backs with no comprehensible explanation of how they were calculated violated § 376.12(h)); *C.R. England*, 508 F. Supp. 2d at 981-82 (finding violation of § 376.12(h) for variable-rate charge-backs that were not disclosed in the lease); *OOIDA v. Ledar Transport*, No. 00-0258-CV-W-2-ECF, 2000 WL 33711271, at *7 (W.D. Mo. Nov. 30, 2000) (*Ledar I*) ("For the few items that Defendant's Standard Lease Agreement does specify, it fails to recite how the amount of each such item is computed (e.g., whether Defendant will deduct simply the actual cost of the charge, or the cost plus administrative fees, etc.)."); *Cunningham v. Lund Trucking Co.*, 662 F. Supp. 2d 1262, 1274 (D. Or. 2009) (finding a violation of 376.12(h) for failure to disclose how deductions for insurance premiums and license fees would be calculated).

The Eleventh Circuit's analysis goes further than the district court in this case with regard to the disclosures required

for variable-rate charge-backs. *Landstar II*, 622 F.3d at 1320. Indeed, it appears Landstar conceded that it was required to provide a full itemization of its costs to third-parties for variable fees. *See id.* ("Landstar admits that § 376.12(h) mandates the disclosure of the motor carrier's third-party, actual costs for variable-rate charge-backs."). While section 376.12(h) makes no explicit distinction between flat and variable fees, the Eleventh Circuit's rationale is sensible in that it reconciles the text of the regulation with its articulated purposes in both the NPRM and the Final Rule. Where carriers have charged a flat fee, no further disclosure of "how" a price is to be determined is warranted, for lessors already have the exact price they will be expected to pay. Where carriers have charged a variable rate, the court held, the regulation requires a clear disclosure of how the price will be calculated.

However, we decline to make the blanket assertion that all variable-rate charge-backs per se require a disclosure of the amount of carriers' profits and costs. A full "recitation as to how the amount of each item is computed" does not *necessarily* require carriers to disclose their precise profits or costs to third-parties, even for variable-rate fees. Instead, a carrier could identify some fixed benchmark, multiplier, percentage mark-up, or other formula that would allow the lessor to calculate his price, without revealing how much of the mark-up contained profits versus other expenses. For example, Swift's 2007 Revised Lease sets a formula for weekly collision insurance rates based on the stated value of the lessor's vehicle. By contrast, as Swift's counsel conceded at oral argument, certain variable-rate charge-backs would require a full, itemized disclosure. For example, if a charge-back was described as being based in part on the carrier's actual third-party costs, *see, e.g.*, *Landstar II*, 622 F.3d at 1320 (discussing a lease specifying "that the charge-back is 'Landstar's vendor cost + $6 administrative fee' "), those costs would have to be disclosed so that the lessor could determine what it needed to pay.

**[10]** The controlling principle is that carriers must provide sufficient information such that lessors can determine in

advance what their final costs will be. Because the variable fees Plaintiffs challenge can be determined without disclosing Swift's actual costs or profits, those costs or profits need not be itemized. For instance, its 2007 Revised Lease charges for collision insurance at a weekly rate of "$.048/$100 of value." For such rates, the regulation does not require disclosure of how each component of the price is calculated, except to the extent they are necessary to determine the final price. This narrower construction is sufficient to arm lessors with the information to determine what will be deducted from their paychecks and alert them when the charge-back includes a mark-up so that they can be wary of any potential abuses.

We therefore affirm the district court's finding that Swift's Revised Lease complies with the disclosure requirements of section 376.12(h).

## B.  Documentation

[11] In addition to its disclosure provision, section 376.12(h) requires Swift to provide "copies of those documents which are necessary to determine the validity of the charge." Appellants contend Swift violated this provision by only listing the final amount charged on its settlement statements instead of disclosing the amount of Swift's mark-ups. At issue is the intended meaning of "validity." Appellants would construe validity to mean the "fairness" of the charge, such that owner-operators could verify how much profit Swift had made through each charge-back and what percentage of the price charged derived from Swift's actual costs. Swift, on the other hand, construes "validity" to mean simply that the charge initially promised is the charge actually deducted from owner-operators' paychecks. In other words, for example, owner-operators only need information sufficient to verify that if Swift said it would charge them $25 per week for insurance, it actually charged them $25 per week.

[12] Because we conclude that the disclosure requirements do not mandate a complete itemization of Swift's profits and

fees (except where required to calculate variable-rate fees), we similarly hold that the documentation provision does not require such an itemization. Indeed, the district court concluded that the weekly settlement statements satisfy the documentation requirement to the extent that they "provide sufficient information to allow [owner-operators] to determine whether or not the charge-back rates previously disclosed to them were being used to determined their charge-backs." *DC Opinion & Order*, 2007 WL 2808997, at *4. This is all the regulation requires to allow lessors to ensure that they only pay for what they have agreed to pay in advance. *See Landstar II*, 622 F.3d at 1319-20; *Rocor Int'l*, 2000 WL 35512897, at *3 ("Likewise, ROCOR's argument that it need not disclose the method of computing the $35.00 charge because [it is] a 'flat fee' does not alter the fact that it did not disclose the amount charged and has not provided 'copies of those documents which are necessary to determine the validity of the charge.' ") (quoting 49 C.F.R. § 376.12(h)).

We affirm the district court's finding that Swift's Revised Lease complies with the documentation requirements of section 376.12(h).

## IV. *RESTITUTION AND DISGORGEMENT*

Plaintiffs argue that section 14704(a)(1)'s provision authorizing the court to provide injunctive relief permits them to seek restitution and disgorgement for Swift's past violation of Truth-in-Leasing regulations. They contend the district court erred in finding that the statute confined the court's equitable powers to injunctive relief only.

The district court notes that this "is not a settled issue in the Ninth Circuit." *OOIDA v. Swift Transp. Co.*, No. CV-02-1059-PHX-PGR, 2009 WL 2983206, at *2 (D. Ariz. Sept. 15, 2009). However, the district court's approach is supported by both the statutory text, 49 U.S.C. § 14704(a)(1) ("A person may bring a civil action for injunctive relief . . . ."), and out-

of-circuit case law on this issue. *See Landstar II*, 622 F.3d at 1324 ("Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement.") (citing *OOIDA v. New Prime, Inc.*, 213 F.R.D. 537, 545 (W.D. Mo. 2002)); *C.R. England*, 508 F. Supp. 2d at 983-84 (concluding that § 14704 only authorized injunctive relief, damages, and attorney's fees).

**[13]** Plaintiffs argue that courts always retain their full equitable powers unless a statute expressly removes them. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). However, *Porter* and its progeny contain the caveat that "unless otherwise provided by statute," the court retains its full equitable powers. *See id.* at 398-99 (construing a statute giving the district court power, "upon a proper showing, to grant 'a permanent or temporary injunction, restraining order, *or other order*' ") (emphasis added); *see also CFTC v. Co Petro Mktg. Grp., Inc.*, 680 F.2d 573, 583-84 (9th Cir. 1982) (construing a statute with open-ended language conferring powers on the court); *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) (same). In this case, by contrast, the statute has done precisely that; it has provided a different scheme of enforcement, listing only injunctive relief to the exclusion of other equitable remedies. Indeed, it " 'is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Landstar II*, 622 F.3d at 1323-24 (quoting *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 488 (1996)). Therefore, the district court's reading of the statute is the most sensible in light of longstanding case law and principles of statutory interpretation.

Plaintiffs also attempt to argue that *Swift I*, the Ninth Circuit's earlier opinion in this case, supports their position with regard to the availability of equitable remedies. 367 F.3d 1108, 1112-14 (9th Cir. 2004). However, *Swift I*'s discussion of "traditional equitable discretion" relates solely to the test courts should use in determining whether to grant a prelimi-

nary injunction. It is thus inapposite to the question presented here as it concerns the court's "discretion to determine the appropriateness of injunctive relief," not its discretion to award other forms of equitable relief in the face of a statute providing only for injunctive relief. *Id.* at 1112.

**[14]** We affirm the district court's determination that restitution and disgorgement are not permitted under section 14704(a)(1).

## V. *DAMAGES*

Plaintiffs argue that the district court erred in concluding that they were not entitled to recover damages under section 14704(a)(2) for Swift's past violation of the Truth-in-Leasing regulations. The district court found that Plaintiffs had failed to demonstrate "actual damages" as a result of Defendants' violations, which the court concluded was required by the statute. *DC Opinion & Order*, 2007 WL 2808997 at *7-9. Plaintiffs, by contrast, argue that the proper measure of damages in this instance is the amount of Swift's undisclosed and undocumented mark-ups.

"We review the trial court's determination that damages were not proved under the clearly erroneous standard." *Landstar II*, 622 F.3d at 1325 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). However, we review its interpretation of a federal statute de novo. *Migi*, 329 F.3d at 1087 (citations omitted).

**[15]** The district court's conclusion regarding the standard for proving damages comports with the statutory text and case law on this question. The text of section 14704(a)(2) states plainly that

> [a] carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for *damages sustained* by a person *as a result of*

an act or omission of that carrier or broker in violation of this part.

49 U.S.C. § 14704(a)(2) (emphases added). Each court that has addressed the issue, including our own, has agreed that the statute requires proof of actual damages. *See Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 621-22 (9th Cir. 2008); *see also, e.g.*, *Landstar II*, 622 F.3d at 1326; *OOIDA v. New Prime, Inc.*, 339 F.3d 1001, 1012 (8th Cir. 2003). We are bound by *Fulfillment Services* and the text of the statute itself to require actual damages.

**[16]** Using the legal standard of actual damages, the district court's decision to grant summary judgment to Swift on the issue of damages was not in error. As the court pointed out, Plaintiffs failed to produce evidence of actual damages, arguing instead that they merited monetary awards in the amount of Swift's undisclosed mark-ups. *DC Opinion & Order*, 2007 WL 2808997, at *8-9. Plaintiffs, on appeal, cannot point to any evidence in the record of monetary loss they have suffered as a result of Swift's violations. Since the mere act of charging a mark-up does not violate the regulations, Plaintiffs cannot prove damages simply by showing that Swift sometimes charged more than its actual costs for chargebacks. *See C.R. England*, 508 F. Supp. 2d at 981-82 ("Simply proving that Defendant charged more to Plaintiffs for a product or service than it paid to a third-party vendor is insufficient, without more, to establish that Plaintiffs have sustained damages as a result of a disclosure violation under § 376.12(h).").

We therefore affirm the district court's determination that Plaintiffs failed to show actual damages as required under section 14704(a)(2).

## VI.  *INJUNCTIVE RELIEF*

Lastly, Appellants argue the district court erred in not awarding injunctive relief against Swift for its past violation of the Truth-in-Leasing regulations.[4] The district court concluded that injunctive relief was unnecessary because Swift is currently compliant with the regulations. *DC Opinion & Order*, 2007 WL 2808997 at *9.

"We review permanent injunctive relief for an abuse of discretion or application of erroneous legal principles." *Hunsaker v. Contra Costa Cnty.*, 149 F.3d 1041, 1042 (9th Cir. 1998). Substantively, there is "[n]o per se rule requiring the issuance of an injunction upon the showing of [a] past violation." *Koracorp*, 575 F.2d at 701. Instead, the district court has discretion to determine "whether there is a reasonable likelihood that the wrong would be repeated." *Id.* If so, it may order relief.

Under this deferential standard of review, we hold that the district court's denial of injunctive relief was not an abuse of discretion. Since the court's declaratory judgment regarding the Old Form Lease's violations of Section 376.12(h) is unchallenged and legally binding on the parties, and Swift's Revised Lease complies with the regulations, the court did not abuse its discretion in determining that injunctive relief was unnecessary.

## VII.  *CROSS-APPEAL: STATUTE OF LIMITATIONS*

Because we affirm the district court on the issues discussed above, we do not reach this issue.

---

[4]As the district court notes, injunctive relief would only be available with regard to OOIDA, as the individual named plaintiffs no longer drive for Swift. *DC Opinion & Order*, 2007 WL 2808997 at *9.

## VIII.    *CONCLUSION*

**[17]** For the foregoing reasons, we affirm the district court's finding that Swift's Revised Lease complies with the Truth-in-Leasing regulations and its denial of damages, injunctive relief, restitution, and disgorgement.

**AFFIRMED**.