**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CANDACE FOX; ANTHONY
GILLESPIE; CHARLES
SCHRECKENBACH,

      Plaintiffs Counter Defendants –
      Appellees,

v.

TRANSAM LEASING, INC.; TRANSAM
TRUCKING, INC.,

      Defendants Counterclaimants –
      Appellants.

No. 15-3203

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:12-CV-02706-CM-GLR)**
_____

Christopher M. McHugh (Shannon D. Johnson and Kendra D. Hanson with him on the
briefs), Seigfreid Bingham, P.C., Kansas City, Missouri, for Defendants
Counterclaimants-Appellants.

Gregory Leyh, Law Office of Gregory Leyh, P.C., Gladstone, Missouri (Richard F.
Lombardo, Kathleen K. Woods, Gregory P. Forney, and Daniel M. Runion, Shaffer
Lombardo Shurin, Kansas City, Missouri, with him on the brief), for Plaintiffs Counter
Defendants-Appellees.

_____

Before **BRISCOE**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.

_____

Plaintiffs, three independent truckers representing themselves and a class of similarly situated truck drivers ("truckers"), contend that Defendants TransAm Trucking, Inc. and TransAm Leasing, Inc. (collectively "TransAm") violated the Department of Transportation's truth-in-leasing regulations by requiring the truckers, who lease their trucks and driving services to TransAm, to pay TransAm $15 each week to use TransAm's satellite communications system. This $15 usage fee violates 49 C.F.R. § 376.12(i), which precludes a motor carrier like TransAm from requiring a trucker "to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." We, therefore, affirm partial summary judgment for the truckers. That ruling will support the truckers' requests for injunctive and declaratory relief. But the truckers also asserted a claim for damages, which the district court certified as a class action. Because the truckers failed to present any evidence of their damages resulting from the unlawful usage fee, however, the district court should have entered summary judgment for TransAm on that damages claim. Having jurisdiction under 28 U.S.C. § 1292(b), therefore, we AFFIRM the district court in part and REVERSE in part.

## I. BACKGROUND

### A. Department of Transportation's truth-in-leasing regulations

Congress regulates leases between independent truckers and federally regulated motor carriers like TransAm, requiring, among other things, that the leases

2

be in writing and specify their duration and the compensation that the carrier will pay

the trucker.  See 49 U.S.C. § 14102(a); see also Owner-Operator Indep. Drivers

Ass'n, Inc. v. Swift Transp. Co., 632 F.3d 1111, 1113 (9th Cir. 2011).  Congress has

tasked the Department of Transportation ("DOT") with further regulating these

leases; the DOT does so through its Federal Motor Carrier Safety Administration and

its truth-in-leasing regulations, 49 C.F.R. Pt. 376.  See Swift Transp., 632 F.3d at

1113.[1]

The truth-in-leasing regulations protect independent truckers from motor

carriers' abusive leasing practices.  See Owner-Operator Indep. Drivers Ass'n, Inc. v.

Comerica Bank (In re Arctic Express Inc.), 636 F.3d 781, 795 (6th Cir. 2011); Global

Van Lines, Inc. v. ICC, 627 F.2d 546, 547-48 (D.C. Cir. 1980); Lease and

Interchange of Vehicles, 42 Fed. Reg. 59,984 (Nov. 23, 1977).  Thus, the objectives

of the regulations are

> to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; . . . to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and . . . to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

---

[1] Congress initially regulated leases between independent truckers and motor carriers through the Interstate Commerce Commission ("ICC") until 1996, when Congress abolished that agency, see Rivas v. Rail Delivery Serv., Inc., 423 F.3d 1079, 1082 (9th Cir. 2005), and transferred the responsibility for regulating these leases to the DOT, see Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1006 (8th Cir. 2003).  While the ICC originally enforced the truth-in-leasing regulations against carriers, when Congress abolished the ICC, Congress chose to enforce the regulations instead by providing truckers with a private cause of action against carriers for violating those regulations, see 49 U.S.C. § 14704(a).  See also Swift Transp., 632 F.3d at 1113.

In re Arctic Express, 636 F.3d at 796 (internal quotation marks, alterations omitted); see also Lease and Interchange of Vehicles, 43 Fed. Reg. 29,812 (July 11, 1978).

**B. This litigation**

This case involves allegations that TransAm has undertaken abusive practices that the truth-in-leasing regulations preclude. Plaintiffs, three independent truckers, sued TransAm on behalf of themselves and all similarly situated truckers. The truth-in-leasing claim at issue here is but one of a number of claims that the truckers have asserted against TransAm. As a general overview of this litigation, the truckers have alleged that TransAm recruited independent drivers by falsely representing, among other things, how much money drivers could make as independent truckers leasing their trucks and driving services to TransAm, rather than driving as TransAm employees; once recruited, TransAm leased semi-tractors to the independent truckers, with an option for the truckers eventually to buy their vehicles; the truckers in turn leased the vehicles, plus their driving services, back to TransAm; and, contrary to its promises, TransAm limited the amount of money that the independent truckers made.

Based on these allegations, the truckers asserted two claims alleging that TransAm had violated the Kansas Consumer Protection Act by making false representations to the truckers to entice them to contract with TransAm, and thirteen claims alleging that the terms of TransAm's standard agreement to lease truckers'

vehicles and driving services violated the DOT's truth-in-leasing regulations.[2]

TransAm, in turn, asserted counterclaims alleging that the truckers had breached their contracts with TransAm.

The only claim at issue in this interlocutory appeal is the truckers' claim that TransAm violated the truth-in-leasing regulations—specifically 49 C.F.R. § 376.12(i)—by requiring the truckers to pay TransAm $15 each week to use TransAm's satellite communications system. Such a system has a variety of uses in the trucking industry, including providing a means of communication between the carrier and the truckers, route planning, keeping automated records of drivers' hours and state fuel taxes, and monitoring the temperature of any refrigerated trailer being hauled.

TransAm purchases its satellite communications system from third-party vendors. According to TransAm, it pays $25 per week per driver for its system.

In order to access TransAm's system, TransAm's standard lease requires that a trucker's vehicle "must contain a satellite communications unit which is compatible with Carrier's satellite communications system. If the Equipment does not have a

---

[2] TransAm, then, has two lease arrangements with the truckers: 1) Defendant TransAm Leasing, Inc. leased vehicles to the truckers, and 2) the truckers then leased their vehicles and driving services to Defendant TransAm Trucking, Inc. TransAm Trucking is the parent company of TransAm Leasing. It is TransAm Trucking's standard form lease agreement for the truckers' vehicles and their driving services that underlies the truth-in-leasing claim at issue in this case. Nevertheless, throughout this litigation, the parties and the district court have treated the two TransAm business entities as one. Thus, we have not distinguished between them in this opinion.

5

compatible satellite communications unit, then Contractor [trucker] may borrow a compatible unit from Carrier during the term hereof." (Aplt. App. 571 ¶ 1(b).)

> [R]egardless of whether the Contractor furnishes a compatible satellite communications unit in the Equipment or borrows a compatible unit from Carrier hereunder, <u>Contractor shall pay to Carrier a satellite communications system usage fee in the amount of fifteen dollars ($15.00) per week.</u> Carrier may deduct any and all such amounts payable by Contractor under this subparagraph 1(b) from the compensation otherwise payable to Contractor hereunder.

(Id. (emphasis added); see also id. 578 ¶ 15(b) (further authorizing TransAm to deduct this $15-per-week usage fee from compensation TransAm owes the trucker)).) Drivers who work as TransAm's employees also use its satellite communications system, but they do not pay a fee.

The district court certified the class—all persons who since November 2, 2008, had leased trucks from TransAm and then leased their vehicles and driving services back to TransAm—but only for the truckers' claim challenging the $15 fee for using TransAm's satellite communications system. The parties then filed cross-motions for summary judgment on that claim. The district court granted the truckers' motion for partial summary judgment on liability, ruling the $15 fee violated 49 C.F.R. § 376.12(i).

TransAm also moved for summary judgment, arguing among other things that, even if its $15 usage fee technically violated § 376.12(i), the truckers could not prove they were entitled to damages as a result of that violation. The district court denied TransAm summary judgment on the question of damages. TransAm appeals both decisions.

6

## II.  STANDARD OF REVIEW

Rule 56(a), Fed. R. Civ. P., requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  We review the district court's summary judgment decisions de novo.  See United States v. Supreme Ct. of N.M., —F.3d—, 2016 WL 5946021, at *13 (10th Cir. June 7, 2016).  "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."  Id. (internal quotation marks omitted).

## III.  DISCUSSION

### A.  TransAm violated the truth-in-leasing regulations by requiring truckers to pay TransAm $15 each week to use TransAm's satellite communications system

The truckers' claim challenging TransAm's $15 weekly fee to use TransAm's satellite communications system requires us to address the interplay between two truth-in-leasing regulations.  The truckers contend that this $15 usage fee violates 49 C.F.R. § 376.12(i).  That regulation provides in pertinent part that

> [t]he lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement.

Not only must a carrier specify this in its lease agreements, but the carrier must also "adhere[] to and perform[]" this lease provision, id. § 376.12; that is, the carrier cannot actually require truckers "to purchase or rent any products, equipment, or

7

services from the authorized carrier as a condition of entering into the lease arrangement."[3]

In defending its $15 usage fee, TransAm relies on a second truth-in-leasing regulation, 49 C.F.R. § 376.12(h), which states:

> Charge back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

As explained below, § 376.12(i) provides, in part, a substantive restriction on the terms a carrier can include in its lease with independent truckers. Section 376.12(h), on the other hand, imposes disclosure and documentation requirements for fees that the carrier may permissibly deduct from the compensation it owes a trucker.

**1. TransAm's $15 fee violates § 376.12(i)**

TransAm violated § 376.12(i) because it required truckers to purchase a service—the use of TransAm's satellite communications system—as a condition of entering into a lease arrangement. More specifically, TransAm required truckers to pay TransAm $15 each week to use TransAm's satellite communications system, regardless of whether the truckers borrowed the hardware to access that system from

---

[3] See Al-Anazi v. Bill Thompson Transp., Inc., No.15-cv-12928, 2016 WL 3611886, at *4-5 (E.D. Mich. July 6, 2016); Mervyn v. Nelson Westerberg, Inc., 76 F. Supp. 3d 715, 718-19 (N.D. Ill. 2014) (citing Owner-Operator Indep. Drivers Ass'n. Inc. v. Mayflower Transit, LLC, 615 F.3d 790 (7th Cir. 2010)); Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., No. 00-0258-CV-W-FJG, 2004 WL 5249148, at *7 (W.D. Mo. Dec. 30, 2004) (unreported).

TransAm or furnished it themselves. We agree with the district court that, while TransAm can require truckers to use a satellite communication system, TransAm "cannot under § 376.12(i) require its independent contractors to purchase or rent this system from it" (Aplt. App. 1018). Instead, truckers "must have the option of obtaining equipment or services—including satellite communications services—from an outside source."[4] (Id. (citing Lease & Interchange of Vehicles, 129 M.C.C. 700, 729-30 (I.C.C. 1978)); cf. Port Drivers Fed'n 18, Inc. v. All Saints, 757 F. Supp. 2d 463, 467 (D.N.J. 2011) (holding lease that required truckers to carry worker's compensation insurance, but gave truckers the option of buying it from the carrier or a third party did not violate § 376.12(i)).[5]

Our conclusion that TransAm's requiring truckers to pay it $15 each week to use TransAm's satellite communications system violated 49 C.F.R. § 376.12(i) is bolstered by the history and purpose of the truth-in-leasing regulations. See Swift Transp., 632 F.3d at 1116-18 (looking, in applying another truth-in-leasing

[4] TransAm does not argue that truckers cannot obtain their own satellite communications system, but only that it would be prohibitively expensive for them to do so.

[5] See also Davis v. Larson Moving & Storage Co., Civ. No. 08-1408 (JNE/JJG), 2008 WL 4755835, at *7-8 (D. Minn. Oct. 27, 2008) (unreported) (holding allegations that carrier required truckers to buy uniforms from the carrier stated claim for violation of § 376.12(i)); Tayssoun Transp., Inc. v. Universal Am-Can, Ltd., No. Civ.A. H-04-1074, 2005 WL 1185811, at *18-19 (S.D. Tex. Apr. 20, 2005) (unreported) (holding carrier's requirement that trucker pay it $5 per trip for cargo insurance violated § 376.12(i)); Ledar Transp., 2004 WL 5249148, at *7 (holding carrier's requirement that truckers buy "insurance products" from carrier violated § 376.12(i)); id. (holding carrier's requirement that truckers "purchase repair services" from carrier violated § 376.12(i)). These cases, plus the cases discussed in the text, appear to be all of the cases applying § 376.12(i) to alleged forced purchases from a carrier.

9

regulation, to regulation's plain language, as well as its purpose and regulatory history).  Congress authorized the truth-in-leasing regulations after a series of hearings in the 1970s "uncovered numerous problems and abuses suffered by the independent truckers."  In re Arctic Express, 636 F.3d at 795.  "Congress's substantive purpose in authorizing the Truth-In-Leasing regulations was to protect" independent truckers, id. (internal quotation marks omitted), "to remedy disparities in bargaining positions between independent owner operators and motor carriers," Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, 398 F.3d 1067, 1070 (8th Cir. 2005), to address many of the "inequities in the lessor/lessee relationship" between carriers and independent truckers, Lease and Interchange of Vehicles, 42 Fed. Reg. 59,984 (Nov. 23, 1977), and to "eliminate or reduce opportunities for . . . illegal or inequitable practices by motor carriers," In re Arctic Express, 636 F.3d at 796 (quotation omitted).  Precluding a carrier from requiring a trucker to purchase products, equipment, or services from it as a condition of entering into a lease with the carrier eliminates the opportunity for "unscrupulous carriers . . . to take unfair advantage" of truckers, but otherwise leaves the trucker and carrier free to negotiate the terms of their lease.  Lease and Interchange of Vehicles, 129 M.C.C. 700, 729-30 (June 13, 1978) (addressing predecessor proposed I.C.C. regulation, 49 C.F.R. § 1057.12(j)).  Truckers, then, must be free to purchase products, equipment, and services from someone other than the carrier, but a trucker with that option can still choose to purchase or rent the product, equipment, or service from the carrier.  See

10

id. This restriction on a carrier <u>requiring</u> a trucker to purchase or rent products, equipment, or services is "all inclusive." Id.

For the foregoing reasons, then, we conclude that the provision in TransAm's standard lease requiring truckers to pay it $15 each week to use TransAm's satellite communications system violates § 376.12(i).

**2. Section 376.12(h) does not validate TransAm's $15 usage fee**

In defending its requirement that truckers pay TransAm $15 each week for using TransAm's satellite communications system, TransAm argues that this fee is lawful because it complies with another truth-in-leasing regulation, 49 C.F.R. § 376.12(h). As previously mentioned, that regulation provides that "[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." Id. In addition, that regulation provides that "[t]he lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge." Id.

Section 376.12(h) addresses a different abusive practice than § 376.12(i). Section 376.12(i), on which the <u>truckers</u> rely, prevents a carrier from forcing truckers to purchase or rent products or services from the carrier rather than having the option of purchasing or renting those products or services from someone else. Section 376.12(h), on the other hand, precludes a motor carrier from unexpectedly reducing truckers' compensation through unexplained deductions from their pay by requiring

11

carriers to specify in the lease what fees the carrier will deduct from truckers'

compensation and further to explain at the outset of the lease arrangement how much

any deduction will be or, if the deduction will vary from time to time, how that

deduction will be calculated.  See Swift, 632 F.3d at 1115 ("One way to ensure

carriers do not take advantage of lessors is to mandate that carriers disclose the full

costs that lessors will be obligated to pay up front.  This prevents carriers from hiding

fees until the charges have already been incurred and allows lessors to make

informed decisions about where to seek products and services.").

Section 376.12(h) does not purport affirmatively to authorize a carrier to

deduct any particular fee.  Instead, it addresses the procedures and disclosure

requirements by which the carrier can deduct an authorized fee from the truckers'

compensation.  Section 367.12(h) applies to "all items that may be initially paid for

by the authorized carrier, but ultimately deducted from the lessor's compensation at

the time of payment or settlement" (emphasis added).  An item "may be" deducted if

the terms of the lease so provide and the deduction does not violate any other

substantive truth-in-leasing regulation (such as § 376.12(i)), so long as the lease

clearly specifies that the fee will be deducted and explains how much the fee will be

or at least how the fee will be calculated, and the carrier provides truckers with

adequate documentation of the fees charged back to them.  See Swift Transp., 632

F.3d at 1115-21; Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.,

12

622 F.3d 1307, 1320-21 (11th Cir. 2010).[6]  Section 376.12(h) is a provision requiring

disclosure and documentation of permissible fees, whereas § 367.12(i) imposes

substantive restrictions as well as disclosure requirements on what fees a carrier can

impose on truckers in the first place.  Section 376.12(h), then, is not in tension with

---

[6] Cases applying § 376.12(h) illustrate that this regulation addresses the disclosures the carrier must make and the documentation the carrier must provide regarding the amount of a fee to be charged back to the trucker, rather than addressing the permissible subject matter of that fee itself.  See, e.g., Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc., 757 F. Supp. 2d 443, 454-55 (D.N.J. 2010) (holding lease violated § 376.12(h) both because it did not indicate how the amounts charged for "repairs or maintenance, gasoline, fuel, oil, labor, tires, insurance or merchandise" would be computed and because lease did "not include a provision that allows drivers to examine documentation regarding charge-backs"); Brinker v. Namcheck, 577 F. Supp. 2d 1052, 1060-61 (W.D. Wis. 2008) (holding carrier violated § 376.12(h) by not clearly specifying the charges in their leases for drug tests, license fees and cargo and liability insurance); Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., 508 F. Supp. 2d 972, 981 (D. Utah 2007) (holding carrier violated § 376.12(h) by not clearly specifying charge backs for such things as fuel, repairs, tires, and administrative fees, by failing to explain how the amount of those charge-backs was to be calculated, and by failing to provide truckers with "copies of documents necessary to determine the validity of the charge-backs"); Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., No. 00-0258-CV-W-2-ECF, 2000 WL 33711271, at *1, *10 (W.D. Mo. Nov. 3, 2000) (unreported) (granting preliminary injunction on claim alleging that carrier violated § 376.12(h) by not clearly specifying fees for "advances for fuel and truck repairs, insurance, damaged trailer equipment, truck lease payments, escrow fund deposits, license fees, fuel and highway use taxes, Qualcomm communications systems, cash advances, etc."). Further, viewing § 376.12(h) as stating disclosure and documentation requirements is consistent with other provisions of the truth-in-leasing regulations, which mandate similar procedural protections and disclosure requirements for truckers by requiring, e.g., that the lease specifies when the lease term begins and ends, 49 C.F.R. § 376.12(b); clearly states the compensation that the carrier will pay the trucker, id. § 376.12(d); specifies which party is responsible for removing identification devices at the end of the lease, id. § 376.12(e); "clearly specif[ies] the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portion of such items," id.; and specifies who is responsible for loading and unloading the vehicle and the compensation, if any, to be paid  for that service, id.

13

§ 376.12(i), and it does not authorize TransAm to require truckers to pay a fee to purchase use of TransAm's satellite communications system in violation of § 376.12(i).

### 3. The Seventh Circuit's decision in Mayflower is inapposite

For the first time on appeal, TransAm relies on Owner-Operator Independent Drivers Association, Inc. v. Mayflower Transit, LLC, 615 F.3d 790 (7th Cir. 2010), to argue that § 376.12(h) permits TransAm to pass along its expenses for the satellite communications system to the truckers. But Mayflower is inapposite.

Mayflower addressed payments for liability insurance which the carrier, by law, is required to purchase. 615 F.3d at 791. More specifically, the carrier must provide liability insurance for any vehicles it uses to transport freight, including vehicles it leases from independent truckers. Id. (citing 49 U.S.C. § 13906; 49 C.F.R. § 376.12(j)(1)). The carrier in Mayflower passed on to its independent truckers the expense the carrier incurred in purchasing this required liability insurance. Id. Truckers argued that, by doing so, the carrier violated 49 C.F.R. § 376.12(i) because the carrier was, in essence, forcing truckers to buy liability insurance from the carrier as a condition of entering into a lease with Mayflower. Mayflower, 615 F.3d at 791, 793-94. The Seventh Circuit rejected the truckers' characterization of the carrier's transferring of its expense in purchasing the required liability insurance to the truckers as forcing them to purchase liability insurance from the carrier, contrary to § 376.12(i). Mayflower, 615 F.3d at 793. The Seventh Circuit further concluded that the carrier could charge truckers for the carrier's

14

expense in purchasing liability insurance, distinguishing between a carrier requiring a trucker to purchase services and products from a carrier, which the carrier cannot do under § 376.12(i), and a carrier transferring some of its required insurance costs to truckers, which a carrier can do. 615 F.3d at 793-94.

Mayflower, then, addressed whether a carrier could pass along to truckers the carrier's own cost of purchasing required liability insurance. The carrier in Mayflower was not compelling truckers to purchase insurance that they could obtain elsewhere. In fact, the carrier was the entity required to obtain the insurance, and Mayflower only addressed the propriety of allocating those expenses between the carrier and the truckers. Here, on the other hand, truckers challenge TransAm requiring them to purchase access to a satellite system from TransAm, when truckers could instead purchase that same service from another entity. It is those compelled purchases that § 376.12(i) prohibits.

Importantly, Mayflower also held that another truth-in-leasing regulation, 49 C.F.R. § 376.12(j)(1), expressly permitted the carrier to charge back to truckers the carrier's cost of providing liability insurance. 615 F.3d at 793-94. Section 376.12(j)(1) provides:

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to [Federal Motor Carrier Safety Administration] regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

15

The Court in Mayflower interpreted the third sentence of this regulation—"[i]f the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor," id.—specifically to authorize a carrier to charge back to truckers the carrier's cost incurred for buying the required liability insurance. See 615 F.3d at 793-94. By contrast, here there is no regulatory authorization for a shipper to pass satellite and communications costs down to the truckers.[7]

For the foregoing reasons, the district court correctly granted the truckers partial summary judgment, holding that TransAm's requirement that truckers pay it a $15 weekly fee to use TransAm's satellite communications system, as a condition to entering into a lease arrangement with TransAm, violated § 376.12(i).

**B. The district court erred in denying TransAm summary judgment on the truckers' claim for damages resulting from TransAm's § 376.12(i) violation**

In addition to seeking declaratory and injunctive relief, the truckers also sought money damages for TransAm's violation of 49 C.F.R. § 376.12(i). See 49 U.S.C. § 14704(a)(2) ("A carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of this part"). It was the

---

[7] TransAm, for the first time on appeal, attempted to argue that the weekly charge to truckers was only an economic adjustment of its costs, and not a required purchase. That argument is inconsistent with the characterization TransAm made to the district court and, further, we will not address arguments raised for the first time on appeal, see Anderson v. Spirit Aerosystems Holdings, Inc., 827 F.3d 1229, 1238-39 (10th Cir. 2016).

truckers' burden to prove their actual damages, see Landstar Sys., 622 F.3d at 1324; that is, that they suffered monetary harm from TransAm's requiring the truckers to pay TransAm $15 each week to use TransAm's satellite communications system instead of giving the truckers the option of purchasing that service elsewhere and not paying TransAm's $15 weekly fee, see Swift Transp., 632 F.3d at 1122.

TransAm moved for summary judgment, arguing, among other things, that even if TransAm's $15 weekly fee violated § 376.12(i) (as it does), the truckers failed to assert any evidence that they suffered any actual damages as a result of that violation. The district court erred in rejecting that argument.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). As the movant, it was TransAm's "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks omitted). Where, as here, however, the movant (TransAm) "does not bear the burden of persuasion at trial," it "may satisfy [its summary-judgment] burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." Id. (internal quotation marks omitted). TransAm met this burden by arguing in its summary judgment motion that the truckers put forth no evidence that they suffered actual damages as the result of TransAm's violation of § 376.12(i).

17

The burden then shifted to the non-moving truckers "to set forth specific facts from which a rational trier of fact could find for" them on their damages claim. Collins, 809 F.3d at 1138 (internal quotation marks omitted). "To satisfy this burden, the nonmovants [truckers] must identify facts by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id. (internal quotation marks omitted). "These facts must establish, at a minimum, an inference of the presence of each element essential to the case."[8] Id. (internal quotation marks omitted).

The truckers failed to meet this burden with regard to their claim that they suffered actual damages as a result of TransAm's § 376.12(i) violation. In fact, the truckers did not even try to meet their burden. Nor did they posit a theory of how they would be entitled to damages. Instead, in response to TransAm's motion for summary judgment, the truckers simply asserted:

> Defendants' arguments regarding damages are premature. Plaintiffs can and will put on evidence regarding damages at time of trial. Defendants' attempts to require Plaintiffs to establish damages at a summary judgment phase is incorrect. Plaintiffs are entitled to seek summary judgment on liability only—especially when liability is as clear-cut as it is here—leaving damages for another day. Defendants point to nothing that establishes Plaintiffs cannot establish damages . . . .

(Aplt. App. 927.) The truckers make the same argument again on appeal.

---

[8] The truckers contend that evidence of actual damages is not "an essential element" of liability for violating § 376.12(i). We need not address whether that statement is correct, however, because TransAm does not appear to assert that particular argument on appeal. Instead, TransAm argues more generally that, if TransAm violated § 376.12(i) (which it did), and if the truckers want to recover damages for the violation of § 376.12(i) (which they do), then the truckers must come forward with some evidence of their damages in order to oppose TransAm's summary judgment motion successfully.

18

Because the truckers did not try to meet their burden of proffering evidence to support their claim for damages in response to TransAm's motion for summary judgment, Rule 56(a) required the district court to grant TransAm summary judgment on that damages claim. See Swift, 632 F.3d at 1122 (upholding summary judgment for carrier because truckers failed to produce any evidence that they had suffered any monetary loss from the carrier's violations of the truth-in-leasing regulations).

The truckers could have made other arguments as to why it was premature for the district court to address their claim for damages. For example, the truckers could have argued they needed additional discovery in order to respond to TransAm's motion for summary judgment on their damages claim. See Fed. R. Civ. P. 56(d) (addressing when facts are as yet unavailable to the nonmovant to oppose summary judgment). The truckers successfully made such an argument as to their individual claims for other violations of the truth-in-leasing regulations, and they made that argument in the same pleading in which truckers asserted they did not yet have to put forth evidence of their damages stemming from the § 376.12(i) violation. But the truckers never made a Rule 56(d) argument regarding their § 376.12(i) damages claim.

Thus, the district court erred in denying TransAm's motion for summary judgment on the issue of damages.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM partial summary judgment for the truckers, upholding the district court's determination that TransAm violated 49

19

C.F.R. § 376.12(i). But we REVERSE the district court's decision to deny TransAm summary judgment on the truckers' claim for damages resulting from that § 376.12(i) violation, and REMAND for further proceedings consistent with this decision.