# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1788

_____

Owner-Operator Independent Drivers    *
Association, Inc.; Marshall Johnson;    *
Jerry Vanboetzelaer, Individually    *
and on behalf of all others similarly    *
situated,    *
   *
       Plaintiffs - Appellants,    *    Appeal from the United States
   *    District Court for the
      v.    *    Western District of Missouri.
   *
New Prime, Inc., doing business as    *
Prime, Inc.; Success Leasing, Inc.,    *
   *
       Defendants - Appellees.    *

_____

Submitted: January 13, 2005
Filed:  February 24, 2005

_____

Before WOLLMAN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Owner operators of truck equipment sued two motor carriers under 49 U.S.C. § 14704(a), alleging violations of the Truth in Leasing regulations. After prevailing in the district court, the motor carriers were granted attorney fees under 49 U.S.C. § 14704(e). The owner operators appeal, arguing that § 14704(e) does not authorize fees to defendants, and we reverse.

Owner-Operator Independent Drivers Association (OOIDA) is a business association whose members own truck equipment and lease the equipment and driving services to motor carriers. Independent owner operators Marshall Johnson and Jerry Vanboetzelaer are both members of OOIDA. New Prime, Inc. does business as Prime, Inc., a regulated motor freight carrier headquartered in Missouri. Success Leasing, an affiliate of Prime, leases tractor units to independent owner operators who then lease the units and their driving services back to Prime. The standard lease agreement which Prime and Success Leasing use with owner operators contained provisions for a repair reserve, tire replacement reserve, and excess mileage account. When the lease agreement was modified in April 1997, these provisions were changed or removed. The service contract Prime uses with owner operators requires them to provide a security deposit of $1,000 to ensure full performance of the lease obligations.

In August 1997 OOIDA, Johnson, and Vanboetzelaer (collectively Owner Operators) filed a class action complaint against Prime and Success Leasing (collectively Prime) under 49 U.S.C. § 14704(a), seeking private enforcement of the ICC Termination Act of 1995 (ICCTA). The Owner Operators claimed that contract terms which called for reserve funds and a security deposit were in violation of the Truth in Leasing regulations codified in 49 C.F.R. § 376, and they sought damages and injunctive relief. The district court concluded that the Federal Highway Administration had primary jurisdiction, and it dismissed the complaint. On appeal this court reversed and remanded, holding that the agency did not have exclusive jurisdiction over the claims. Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778 (8th Cir. 1999) (Prime I), cert. denied, 529 U.S. 1066.

On remand the district court denied the request by the Owner Operators for class certification on the basis that issues affecting individual class members predominated over common questions of law or fact. It also granted summary judgment to Prime as to all plaintiffs. It held that because Johnson and Vanboetzelaer

-2-

had entered into their lease agreements before January 1, 1996, the effective date of the ICCTA, granting them a private right of action would require an impermissible retroactive application of the statute. The district court held that OOIDA could not maintain claims based on the Johnson and Vanboetzelaer leases for the same reason. It also observed that the claims for injunctive relief based on the Johnson and Vanboetzelaer leases would be moot anyway because the contested lease terms had been changed in April 1997. Although OOIDA claimed that the leases as amended still violated the regulations, the district court held as a matter of law that they did not, and we affirmed the judgment. See Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001 (8th Cir. 2003) (Prime II), cert. denied, 124 S. Ct. 1878.

Prime then moved for attorney fees and costs under 49 U.S.C. § 14704(e). Section 14704(e) is short and succinct, providing only that

> The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action.

Under the district court's reading, the statute unambiguously provides for attorney fees to the prevailing party, regardless of whether the party is a plaintiff or defendant. It thus concluded that Prime was entitled to recover for its attorney fees as the prevailing party and ordered the Owner Operators to pay Prime $559,718 for its fees. The Owner Operators argue on their appeal that the district court erred in awarding fees to Prime because the statute does not authorize fees to prevailing defendants. We review conclusions of law regarding attorney fees de novo. Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997).

We do not agree that the text of § 14704(e) unambiguously authorizes an award to prevailing defendants. The text does not say that defendants are entitled to fees;

-3-

it does not even say that the prevailing party shall be awarded fees. It also does not mention plaintiffs, but the context in which the fee provision is situated relates to plaintiffs. The title of § 14704, "Rights and remedies of persons injured by carriers or brokers," indicates that the fee shifting provision within that section is one of the remedies available to injured plaintiffs. That idea is reinforced in the fees subsection, for § 14704(e) says the fee is to be awarded "under this section." See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). As Prime points out, however, § 14704(e) provides that fees are to be taxed "as part of the costs of the action," and costs are generally associated with a prevailing party. Fed. R. Civ. P. 54(d).

Since the statutory language used in the two sentences of § 14704(e) is not free from ambiguity, we must look elsewhere to determine what Congress intended. Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 333 (1998). In doing so, "we are mindful that Congress legislates against the strong background of the American Rule." Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). Parties in this country pay their own attorney fees unless Congress directs otherwise. Id. Here, Congress directed that the "district court shall award a reasonable attorney's fee." 49 U.S.C. § 14704(e) (emphasis added). If we were to adopt the approach taken by Prime and the district court and to determine that fees must be awarded to whichever party prevails, we would have to assume that Congress had intended to adopt the British rule that the loser pays. Adoption of the British rule would be a marked departure from American practice, and we should not conclude that Congress made such a departure absent "explicit statutory language and legislative comment" to that effect. See Fogerty, 510 U.S. at 533.

The legislative history surrounding § 14704(e) is sparse. The original version of the ICCTA that emerged from the House Committee on Transportation and Infrastructure provided that "The district court shall award a reasonable attorney's fee as part of the damages for which a carrier or broker is found liable under this subsection. The district court shall tax and collect that fee as part of the costs of the

action." H.R. Rep. No. 104-311, pt. B, at 63 (1995), reprinted in 1995 U.S.C.C.A.N. 793. The subsection was changed to its current version by a "manager's amendment" offered by Representative Shuster that recommended edits to it as well as 165 other changes to the proposed ICCTA. 141 Cong. Rec. H12,262-66. Representative Shuster, who was committee chairman, and several other committee members urged adoption of the amendment by emphasizing that the changes were mostly technical and that the amendment enjoyed widespread support among committee members. Id. at 12,265-66. There was no mention of the attorney fee provision in these remarks and no debate about the manager's amendment. It passed with a voice vote.

The change in the attorney fee provision eliminated language awarding fees "as part of the damages" to the plaintiff, and the Owner Operators contend that the change was intended to ensure that plaintiffs who received injunctive relief would be included. Prime argues instead that Congress made the change to benefit prevailing defendants, but it has not been able to point to any other federal statute that mandates an award of attorney fees to a prevailing defendant. Given the sea change that such a provision would represent, we cannot conclude that it would have received the universal approval of a congressional committee and been silently adopted by the whole Congress.

Interpreting the fee shifting provision to mandate an award to prevailing defendants would also run counter to the purpose of the ICCTA and its regulatory framework. A review of the development in the Truth in Leasing regulations indicates that they were intended to remedy disparities in bargaining positions between independent owner operators and motor carriers. The regulations were originally developed by the Interstate Commerce Commission (ICC), and the ICC's notice of proposed rulemaking noted "the Commission's deep concern for the problems faced by the owner-operator in making a decent living in his chosen profession." 42 Fed. Reg. 59,984 (Nov. 23, 1977). In its notice of proposed final rules, the ICC said that some of its rulemaking objectives were "to eliminate or reduce

opportunities for skimming and other illegal or inequitable practices; and to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." 43 Fed. Reg. 29,812 (July 11, 1978).

When commenting on the proposed rules, ICC Chairman O'Neal observed:

My concern is that because they like to eat, owner-operators will continue to find it necessary to enter into contracts with carriers they would like to avoid. . . . The difficulty is that one owner-operator by himself will have very little chance of bargaining any changes in any contract. His option will be take it or leave it.

Id. at 29,813. The problems owner operators faced and the remedial nature of the Truth in Leasing regulations are underscored by comments the ICC made in initiating a later notice of proposed rulemaking: "This proceeding arises out of attempts to solve serious and longstanding problems facing owner-operators." 46 Fed. Reg. 44,013 (Sept. 2, 1981).

The ICC was terminated by Congress in 1995 with the enactment of the ICCTA, which allowed owner operators to vindicate their rights in federal court instead of relying on agency action. Prime I, 192 F.3d at 785. The Department of Transportation, the agency which now administers the Truth in Leasing regulations, has also expressed its concern about "the uneven bargaining power of owner-operators, the small dollar amount of their claims, and the unique nature of their operations." U.S. Dep't of Transp., Report on the Functions of the Interstate Commerce Commission, July 1995, at 86.

The right to enforce privately the Truth in Leasing regulations, a right which this court recognized in Prime I, would be severely chilled if we were to adopt Prime's interpretation of § 14704(e). Claims of independent owner operators may often be for a relatively small amount of damages. The class action complaint filed in this

action, for example, alleged that each prospective class member had deposited approximately $1,000 - $20,000 with Prime under the disputed contract terms that established reserve funds and a security deposit. This shows that the potential rewards are already low, and increasing the risks by imposing attorney fees on owner operators who do not prevail would discourage them from pursuing their claims in court. Absent any evidence to the contrary, we do not conclude that Congress established a private remedy and simultaneously created a unique and formidable barrier to its attainment.

In summary, we do not believe that Congress intended to single out owner operators of truck equipment to bear the unique burden of a mandatory fee shifting provision in favor of defendants. The ambiguity of the statutory language, the paucity of legislative comment, and the purpose of the ICCTA and its regulatory framework all argue against the construction Prime urges us to adopt. We conclude that the statutory scheme was designed to benefit plaintiffs and that the remedy provided in § 14704(e) must be read consistent with that. Accordingly, we reverse and vacate the judgment awarding attorney fees to appellees.

_____