FILED
United States Court of Appeals
Tenth Circuit

August 4, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROGER J. LUCAS,

      Plaintiff - Appellant,

v.

THE OFFICE OF THE COLORADO
STATE PUBLIC DEFENDER, a public
entity; DOUGLAS K. WILSON,
individually and in his official capacity as
the Colorado State Public Defender;
CARRIE THOMPSON, individually and in
her official capacity as the Office Head for
the Colorado Springs Public Defender's
Regional Office,

      Defendants - Appellees.

No. 16-1378
(D.C. No. 1:15-CV-00713-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

    Roger J. Lucas, an attorney representing himself pro se, filed a complaint

asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and state tort law against his former employer, the Office of the Colorado State Public Defender (Defender's Office); Douglas K. Wilson, the Colorado State Public Defender; and Carrie Thompson, the head of the Colorado Springs Regional Office of the Defender's Office. Lucas was fired after he violated a corrective action prohibiting him from unwanted contact with a younger, female attorney in the Defender's Office. He alleges that his termination was based on race, reverse-sexual-discrimination, and prohibited retaliation; that his Equal Protection rights were violated; and that the individual defendants interfered with a post-termination employment opportunity. On cross-motions for summary judgment, the district court denied Lucas's motion and granted the defendants' motion. Lucas appeals, and we affirm.

I.

The Defender's Office hired a new Deputy Public Defender, Catherine Peterson, in June 2013, shortly after she graduated from law school. Lucas, a Deputy Public Defender hired in 2007, immediately began coming to her office daily to talk. Lucas texted Peterson, saying he thought they would be great together and wanting an opportunity to get to know her. Peterson told Lucas his texts were inappropriate and he should only talk to her about work. Lucas continued sending her non-work-related messages on Facebook. He told her he had "check[ed] her out" by looking at her photos, comments, and likes on Facebook; had "completely" fallen for her, "a thousand times harder than" before; thought they "would complement each other

2

well"; and hoped she would unblock him from her Facebook page. Aplt. App. Vol. II-A at 430.

In July 2013, Peterson told her supervisor, Michelle Newell, that Lucas's attention made her uncomfortable, and that she wanted him to leave her alone. Newell and defendant Thompson spoke with Lucas's supervisor, who, in turn, met with Lucas and told him to keep all future communications with Peterson strictly work-related. But Lucas continued to have non-work-related contact with Peterson. For example, he spoke to her aggressively and drunkenly at a hotel bar after a work conference. When Lucas refused to leave Peterson alone, a supervisor escorted him out of the bar and later told him he was not to call, text, or e-mail Peterson unless it was work-related.

Lucas persisted. He continued to send Peterson non-work-related messages on Facebook and sent her flowers. In one message, Lucas said, "I just wanted to see you happy –whether that be by congratulating you on your trial wins, giving you a card, or giving you anonymous flowers." *Id*. at 432. After an office party, Lucas came into Peterson's office without knocking, and made lewd comments when he saw her there in the presence of a male co-worker. Peterson told Lucas she would report him if he came in her office again without permission. A few weeks later, Lucas sent an e-mail to all staff saying he had brought back candy from a trip but "[i]f I didn't leave any on your desk, it's cuz I want you to stop by my office for a kiss, or maybe something more . . . ." *Id*. at 490. Peterson interpreted this as directed at her because Lucas did not leave candy on her desk. Peterson reported to Newell that Lucas was

3

continuing unwanted communications with her, that she was very upset, and that she wanted no further contact with him.

Thompson met with Lucas, who admitted he was attracted to Peterson. In January 2014, Thompson issued Lucas a formal corrective action, instructing him not to communicate with Peterson in any way and to direct all work-related communications with Peterson through another attorney. The corrective action warned Lucas he was subject to dismissal if he violated its no-contact directive. Even so, Lucas directly contacted Peterson about a work matter in May 2014, without going through another co-worker, in violation of the corrective action.

That same month, a co-worker informed Thompson that Lucas believed the corrective action was unfair, thought Peterson was creating a hostile work environment and wanted her fired, and threatened to contact the Equal Employment Opportunity Commission (EEOC). Lucas then spoke directly with Thompson, stating he wanted Thompson to lift the no-contact restrictions and fire Peterson, and that he would report her if she did not do so. Thompson refused to lift the restrictions or fire Peterson and told Lucas she had arranged for a mediator to assist in resolving this conflict. Before the mediation occurred, however, Lucas again violated the no-contact directive by e-mailing Peterson to ask for her assistance on a sexual-assault case. Peterson was upset and forwarded the e-mail to Thompson. When Thompson confronted Lucas to ask why he had flagrantly violated the no-contact directive, Lucas said the no-contact directive was discriminatory, challenged the accuracy of Peterson's allegations, and said that Peterson's body language told him

4

she was okay with contact. Thompson told Lucas the corrective action would remain in place. Lucas said if his concerns were not addressed he would contact the EEOC to intervene. Thompson told him to take whatever action he felt was necessary.

The next day, Thompson sent a detailed letter to defendant Wilson describing Lucas's unwelcome communications with Peterson and his failure to comply with the no-contact directive. Thompson recommended that Wilson terminate Lucas's employment "due to [his] unwillingness to abide by the restrictions as laid out in the corrective action." *Id*. at 352. Wilson terminated Lucas that day. Lucas later applied for a contract position with the Office of Alternative Defense Counsel (OADC), but was not hired.

After exhausting his remedies and receiving a right-to-sue letter from the EEOC, Lucas filed suit against defendants, asserting three Title VII claims against the Defender's Office: race discrimination (he is a Filipino-American), reverse-sexual-discrimination, and retaliation. He asserted two claims against Thompson and Wilson in their individual and official capacities: a § 1983 claim asserting race and gender discrimination under the Equal Protection Clause of the Fourteenth Amendment and a state-law tortious-interference claim, alleging Thompson and Wilson had interfered with his opportunity to be hired by OADC. The parties consented to proceed before a magistrate judge and filed cross-motions for summary judgment. The magistrate judge denied Lucas's motion and granted defendants' motion. Lucas appeals.

II.

5

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review de novo a magistrate judge's summary-judgment decisions, drawing all reasonable inferences in the non-moving party's favor. *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016) (treating cross-motions for summary judgment separately and viewing the evidence in the light most favorable to each non-moving party).

A. <u>Title VII and Equal Protection Discrimination Claims</u>. In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973), the Supreme Court set forth a three-part burden-shifting framework to analyze circumstantial-evidence Title VII discrimination claims. The *McDonnell Douglas* framework applies as well to § 1983 claims based on allegations of discrimination under the Equal Protection Clause. *English v. Colo. Dep't of Corrs.*, 248 F.3d 1002, 1007 (10th Cir. 2001). Under this framework, a plaintiff must first establish a prima facie case of discrimination by demonstrating that he is a member of a protected class and suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). In a reverse-gender-discrimination case, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (internal quotation marks omitted).

6

If the plaintiff establishes a prima facie case of discrimination, the defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *DePaula*, 859 F.3d at 970. This circuit has held that "[t]he defendant's burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face." *Id*. (internal quotation marks and citation omitted). If the defendant carries this burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason for the employment decision is not the true reason, but a pretext for discrimination. *Id*.

The magistrate judge ruled that the corrective action did not constitute an adverse employment action, but that the termination did. He assumed for the sake of argument that Lucas had established a prima facie case of race and reverse-gender-discrimination as to his termination. He ruled that the defendants had met their *McDonnell Douglas* burden because they had consistently articulated a legitimate, non-discriminatory reason for terminating Lucas—namely, his repeated and unwanted contact with Peterson and his insubordination and unwillingness to comply with the corrective action. The magistrate judge ruled Lucas had failed to establish a genuine issue of material fact that the reasons articulated by the defendants for terminating him were pretext for discrimination; thus, he granted the defendants' motion for summary judgment.

On appeal, Lucas argues the magistrate judge erred in ruling that the imposition of the corrective action was not an adverse employment action. He also

challenges the application of the *McDonnell Douglas* framework, arguing that employer defendants should be required to prove that their proffered reason for an adverse action is true before the burden shifts to plaintiffs to show pretext.

1. Adverse Employment Action. An "[a]dverse employment action" for purposes of a discrimination claim is limited "to adverse actions that affect employment or alter the conditions of the workplace." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 62 (2006) (alteration omitted). These actions involve a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotation marks omitted).

Lucas, citing *Annett v. University of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004), argues that "[a]cts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions," Aplt. Opening Br. at 27. He claims, without evidentiary support, that the corrective action subjected him to potential humiliation as a sexual predator. But his argument rests on a flawed legal premise: *Annett* defined an "adverse employment action" for purposes of a Title VII *retaliation* claim, which is broader than the definition of an "adverse employment action" for a Title VII *discrimination* claim. *See Burlington N.*, 548 U.S. at 61-65, 68 (holding that Title VII's anti-retaliation provision prohibits any employer action that might "dissuade[ ] a reasonable worker from making or supporting a [discrimination] charge" and thus,

8

covers a broader range of employer conduct than its substantive discrimination provision); *see also Piercy*, 480 F.3d at 1203 (explaining the *Burlington Northern* made clear that the contours of an adverse action for discrimination claims are narrower than those for retaliation claims). We have held that a disciplinary or corrective action "standing alone, is not an adverse employment action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006). "A written warning *may* be an adverse employment action only if it effects a significant change in the plaintiff's employment *status*." *Id.* Lucas presented no evidence that the corrective action had any effect on his salary or benefits, or that it caused a significant adverse change in the terms and conditions of his employment. The magistrate judge did not err in ruling the corrective action was not an adverse employment action.[1]

     2. <u>McDonnell Douglas Burdens</u>. Lucas argues we should overturn this Circuit's long-held precedent that under the *McDonnell Douglas* framework employers need only articulate a reason for the challenged employment action that is

---

[1] Lucas argues that the imposition of the corrective action is an adverse employment action because it violated his constitutional freedom of association to interact with co-workers and to pursue intimate human relationships. Whether a potential, clearly unwanted, dating relationship could qualify for constitutional protection is entirely irrelevant, however, to the issue of whether the corrective action qualifies as an adverse employment action under Title VII. Lucas also argues for the first time on appeal that the corrective action was an adverse employment action because it violated his procedural due-process rights. This argument is as frivolous as his freedom-of-association theory and suffers from the additional defect of not having been raised below. Lucas also attempts several other due-process arguments in his Opening Brief, which we will not address because he did not assert any due-process claim in his complaint. *See Davis v. Clifford*, 825 F.3d 1131, 1137 n.3 (10th Cir. 2016) (refusing to consider claims not presented in complaint).

9

legitimate and nondiscriminatory on its face. He argues employers should instead be required to show their proffered reasons are true. Lucas does not challenge the magistrate judge's ruling that he failed to present evidence of pretext. Instead, he argues that under his proposed application of *McDonnell Douglas*, the magistrate judge should never have shifted the burden back to him to show pretext because the defendants failed to present evidence showing that their reasons for terminating him were true.

The Supreme Court settled this debate almost forty years ago, holding that "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The Court reaffirmed this holding more recently in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), again stating the defendant's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id*. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).[2] Moreover, our Circuit has repeatedly and recently held that a defendant need only proffer a reason that is legitimate and non-discriminatory on its face. *E.g.*, *DePaula*, 859 F.3d at 970 (defendant's "reasons need only be legitimate and non-discriminatory on their face" (internal quotation marks omitted)).

---

[2] Lucas also cites as support a Hawaii Supreme Court case that modified the test adopted in *McDonnell Douglas* to analyze a state anti-discrimination statute. A state court interpreting a state statute does not, as the magistrate judge correctly observed, control our interpretation of Title VII.

10

Lucas asks us to abandon this precedent, arguing that holding employers to an "exceedingly light" step-two burden undermines the entire framework, as it permits the employer to meet its burden with mere conclusory statements and irrelevant information. He notes that some have criticized *McDonnell Douglas*, citing generally Timothy M. Tymkovich, *The Problem with Pretext*, 85 Denv. U. L. Rev. 503 (2008). But *McDonnell Douglas* remains binding on us. "We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). The magistrate judge correctly applied the *McDonnell Douglas* framework. Under that framework, the defendants met their burden and Lucas failed to present any evidence that the proffered reason for terminating him was pretext for discrimination.[3]

B. Title VII Retaliation Claim. The *McDonnell Douglas* framework also applies to circumstantial-evidence Title VII retaliation claims. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). To establish a prima facie retaliation claim, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the

---

[3] Lucas claims the magistrate judge improperly granted summary judgment in favor of defendants as a sanction for Lucas's failure to present his evidence in compliance with Federal Rule of Civil Procedure 56. The magistrate judge did criticize Lucas for his inclusion of improper arguments and unsubstantiated allegations, as well as his frequent failure to link his assertions to citations to the record. But the magistrate judge clearly labored arduously to review the evidence presented by both sides and granted summary judgment on the merits, not as a sanction.

protected activity and the materially adverse action." *Id*. (internal quotation marks omitted). The magistrate judge ruled that Lucas presented no evidence that he had engaged in protected opposition to discrimination.

On appeal, Lucas argues that his statements to the defendants about possibly contacting the EEOC to complain about the corrective action amounted to protected activity sufficient to establish a prima facie retaliation claim. We disagree. To meet his prima facie burden, Lucas must show he "convey[ed] to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008). The evidence viewed in the light most favorable to Lucas is that he complained to Thompson of unfair treatment and threatened to complain to the EEOC about a hostile work environment, but nothing suggests that he complained to Thompson or to any other defendant that he was being discriminated against because of his race or gender. "A vague reference to discrimination and harassment without any indication that this misconduct was motivated by [race, gender, or other category protected by Title VII] does not constitute protected activity and will not support a retaliation claim." *Id*. at 1203 n.13 (internal quotation marks omitted); *see also Petersen v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (holding the employee's complaints must give adequate notice to the employer that the employee is complaining of conduct prohibited by Title VII). We agree that Lucas failed to establish a prima facie retaliation claim.

C.  Tortious Interference Claim.  The OADC's director submitted an affidavit, undisputed by any other evidence, testifying that her decision not to offer Lucas an OADC contract was based primarily on Lucas's failure to list any references from the Defender's Office in his application, and that she was never contacted by Thompson or Wilson about Lucas, his qualifications or his application.  Based on this undisputed evidence, the magistrate judge ruled that Lucas failed to present any evidence that Thompson and White interfered with his ability to obtain an OADC contract.  *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (holding that under Colorado law, "[t]ortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract").

Lucas asserts the magistrate judge failed to view the evidence in the light most favorable to him and impermissibly made credibility determinations.  He argues that a reasonable inference could be drawn that Thompson interfered with Lucas's opportunity to get contract work with OADC based on evidence that Thompson and the OADC director were friends, communicated with each other on the day Lucas was terminated, and had a history of discussing whether Defender Office employees should receive OADC contracts.  The undisputed evidence in the record, however, is that the OADC director never communicated with Thompson or Wilson about Lucas.  Lucas's argument requires a factfinder to speculate that perhaps the undisputed evidence is inaccurate, but such speculation and conjecture is insufficient to create a genuine issue of material fact.  *See Pioneer Centres Holding Co. Emp. Stock*

13

*Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (holding that an inference is unreasonable if it is a mere possibility or involves a degree of speculation and conjecture that requires the factfinder to make a guess).

We affirm the magistrate judge's grant of summary judgment in favor of the defendants.

Entered for the Court


Gregory A. Phillips
Circuit Judge